

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black BLU Studio Mini 2023 Cellular Phone<br>Case Number: SYS-23-08-0721<br>("Target Device") | Case No. '23 MJ2822 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the             Southern             District of             California            , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of CBP Officer Adriana A. Burns, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Adriana A. Burns, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by             telephone             *(specify reliable electronic means)*.

Date:    08/04/2023

*Judge's signature*

City and state:  San Diego, California            Hon. MICHELLE M. PETTIT, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Adriana A. Burns, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black BLU Studio Mini 2023 Cellular Phone
> Case Number: SYS-23-08-0721

("**Target Device**")

, as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Diego Homar OLAGUE (D1) for transportation of illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

# TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2008 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fifteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle

2

aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media,

3

or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On August 3, 2023, United States Customs and Border Protection (CBP) Enforcement Officers conducted a special enforcement operation in the vehicle inspection area of the San Ysidro Port of Entry.

12. At approximately 11:21 A.M., J.G.C.C. (Driver), a citizen of Mexico, applied for admission into the United States from Mexico via the San Ysidro, California Port of Entry vehicle primary lanes as the driver of a Volkswagen Jetta, accompanied by a passenger, S.N.A.P., a United States citizen. Upon inspection before a CBP Officer, Driver said they were going to San Diego, California with nothing to declare from Mexico. The CBP Officer asked the Driver if the vehicle was his and Driver stated it was. The CBP Officer conducted an inspection of the vehicle and discovered one individual concealed within the trunk. Driver and passenger were secured and turned over to on-site CBP Officers participating in the enforcement operation. At the primary booth, CBP Officers assisted in removing one male from the trunk of the vehicle, who was later identified as Silvino VASQUEZ-Jacinto (D2) and determined to be a citizen of Mexico without documents to enter the United States. The vehicle was driven to post primary by another officer.

5

13. During a recorded interview, Driver, denied knowledge of the individual concealed in his vehicle. Driver stated he was hired by a man who solicited him to pick up money from the U.S. and take it back to Tijuana, Mexico for a payment. Driver stated he was instructed to drive to Southwestern College to pick up the money and return it to Plaza Alameda in Mexico.

14. In the security office, D2 was queried by fingerprint and photograph submission through the Integrated Automated Fingerprint Identification System (IAFIS) and the Automated Biometric Identification System (IDENT). IAFIS and IDENT returned a match to the query linking D2 to Federal Bureau of Investigation (FBI) and Department of Homeland Security (DHS) records. DHS records identified D2 as a citizen of Mexico and a previously deported alien.

15. Further DHS records confirmed D2 is a citizen of Mexico without documents or entitlements to enter the United States. DHS records revealed D2 was granted voluntary departure from the United States to Mexico by an Immigration Judge on or about December 7, 2016, and subsequently physically removed from the United States to Mexico on or about December 8, 2016, via San Ysidro, California. D2 was last physically removed from the United States to Mexico on or about July 23, 2023, via Texas, pursuant to a Reinstatement of Deport Order. DHS records contain no evidence D2 has applied for or received permission from the Attorney General of the United States or his designated successor, the Secretary of Homeland Security, to legally re-enter the United States.

16. At approximately 11:30 A.M., CBP Officers placed an audio recording device on Driver and officers allowed Driver and passenger to continue into the United States under constant surveillance to identify any individuals coming to retrieve the vehicle that previously contained D2 concealed inside the trunk. Officers conducted surveillance of Driver, passenger, and the vehicle from the San Ysidro Port of Entry to Southwestern College. While enroute to Southwestern College, the smuggling coordinator contacted

Driver and instructed them to change course and drive the Jetta to the Las Americas Premium Outlets. While at Las Americas, the smuggling coordinator contacted Driver and advised them there was a person, D2, concealed within the trunk of the Jetta and instructed them to remove D2 from the trunk. Driver declined to remove D2 from the trunk and told the smuggling coordinator he was going to drive to the 99 Cents Only store for someone to arrive and remove D2 from the trunk.

17. At approximately 12:40 P.M., CBP Officers set up visual surveillance at the 99 Cents Only store. When Driver and passenger arrived at 99 Cents Only store, investigative personal instructed them to walk into the store. At approximately 12:53 P.M., a blue Ford Edge occupied by a male driver and a female passenger, later identified as Diego Homar OLAGUE (D1) and Francisca Elena TELLO-Mendoza (Material Witness), arrived, and parked next to the Jetta. D1 exited the Ford Edge and was observed opening the rear driver's side door of the Jetta and pulling back on the backrest to remove the undocumented person he believed to be concealed inside the trunk. CBP Officers converged to the immediate area of the Jetta and took D1 and Material Witness into custody.

18. At approximately 5:02 P.M., during a video-recorded interview, D2 was advised of his Miranda Rights and elected to make a statement. D2 admitted he is a citizen of Mexico without documents to enter, pass through or reside in the United States. D2 stated he made the smuggling arrangements for a payment to be discussed upon successful entry into the United States. D2 stated he is aware it is against the law to attempt to enter the United States without lawful documents. D2 admitted to having been previously removed from the United States to Mexico by an Immigration Judge. D2 had a destination of Santa Maria, California.

19. During a video-recorded interview, Material Witness admitted she is a citizen of Mexico without documents to lawfully enter or reside in the United States. Material

Witness stated she made the smuggling arrangements with an unknown female in Mexico and was going to pay $15,000.00 USD upon successful entry into the United States. Material Witness stated an unknown male smuggled her into the United States today in the trunk of a white vehicle. Material Witness stated she was taken out of the trunk and told to sit in the vehicle for approximately five to six minutes as they waited for someone to come pick her up. Material Witness stated a male, who was later identified as D1, driving a dark colored vehicle, arrived, and she was instructed to get into his vehicle. Material Witness stated D1 drove around and then told her they were going to pick up a male, shortly before being apprehended by CBP Officers. Material Witness stated she was going to Santa Maria, California to live and work.

20. The **Target Device** was discovered in D1's hand at the time of arrest. During the interview, D1 was asked if he would like to make a phone call and utilized the **Target Device** to retrieve three phone numbers from his contacts; **Target Device** was subsequently seized.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual

8

for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on July 3, 2023, up to and including August 3, 2023.

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

22. Because the **Target Device** was seized at the time of D1's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from July 3, 2023, through August 3, 2023.

23. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.



Adriana A. Burns, CBP Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 4th day of August, 2023.

_____
HON. MICHELLE M. PETTIT
United States Magistrate Judge

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black BLU Studio Mini 2023 Cellular Phone

    Case Number: SYS-23-08-0721

    (**"Target Device"**)

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 3, 2023 to August 3, 2023:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.